**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 03-21168-CIV-GARBER

JAMES HARDIE BUILDING
PRODUCTS, INC.,

      Plaintiff,

v.

GSE DEVELOPMENT CORPORATION,

      Defendant.

_____

GSE DEVELOPMENT CORPORATION,

      Counterplaintiff,

v.

JAMES HARDIE BUILDING
PRODUCTS, INC. and FERGUSON
ENTERPRISES, INC.,

      Counterdefendants.

_____/

**OMNIBUS ORDER**

   THIS CAUSE is before the Court on the Motion for Summary Judgment filed by

Plaintiff/Counterdefendant James Hardie Building Products, Inc. ("Hardie") and Counterdefendant

Ferguson Enterprises, Inc. ("Ferguson") [D.E. 215], Hardie's and Ferguson's subsequent Motions for

Summary Judgment (DE 256 and 258), Hardie's Motion for Voluntary Dismissal [D.E. 244], and

Defendant/Counterplaintiff GSE Development Corporation's ("GSE") "Motion to Compel Compliance

with Rule 26(a)(1)( C), Fed.R.Civ.P., Motion to Compel Production, Motion to Compel Compliance

with Court's July 1, 2005 Order, Renewed Motion to Strike Supplemental Unverified Interrogatory Answers and Renewed Motion for Sanctions" [D.E. 241], and Hardie's Emergency Motion to Strike counterplaintiff's Expert Witness Disclosure [D.E. 262] which was filed on July 10, 2007, the date of the hearing on the above-referenced motions.

## I.  BACKGROUND

This case arises out of a dispute between the Parties relating to Fiber Reinforced Concrete Pipe ("FRCP") manufactured by plaintiff/counterdefendant Hardie and distributed by counterdefendant Ferguson to defendant/counterplaintiff GSE.  In August, 2002, Hardie delivered GSE approximately 3963 linear feet of FRCP for installation on a construction project known as the Grand Oaks Estate Project (the "Project").  Between August, 2002 and December, 2002, GSE installed Hardie-manufactured FRCP on the Project.

In late 2002 and early 2003, Hardie received information from GSE that the FRCP installed on the Project was leaking.  Hardie then began internal investigations into GSE's claims that there may have been defects or deficiencies in the FRCP Hardie delivered to the Project.  In early 2003, GSE began to assert that Hardie's FRCP was defective.  GSE undertook efforts to exhume the FRCP it had installed on the Project and replaced the installed FRCP with an alternative product.

On April 9, 2003, Hardie wrote GSE a letter and requested that GSE "take reasonable precautions to avoid unnecessarily damaging the FRCP pipe" that GSE was removing from the Project and further requested that GSE "preserve the FRCP at a reasonably secure location at the site for pick-up by Hardie." [D.E. 215, Exh. 4].  On April 11, 2003, Hardie sent GSE another letter advising GSE of the significant evidentiary value of the exhumed FRCP.  *Id*. at Exh. 5.  GSE responded in a letter

dated April 14, 2003, and assured Hardie that the FRCP which "had been excavated and removed by GSE to date" had been carefully removed and "safely stored."  *Id.* at Exh. 6.

On May 9, 2003, Hardie filed the instant lawsuit against GSE on three grounds: (1) trade libel; (2) tortious interference with a contract; and (3) deceptive and unfair trade practices. [D.E. 1].  Hardie subsequently amended the Complaint to include a fourth claim against GSE, for civil conspiracy. [D.E. 50].

On August 13, 2003, GSE sent a letter to Hardie claiming that it had "used painstaking effort to remove the FRCP so as to cause minimal damage to the FRCP." [D.E. 215 at Exh. 7].

On September 29, 2003, GSE filed a counterclaim against Hardie and Ferguson, setting forth six causes of action.  GSE sued Hardie and Ferguson for breach of implied warranty of merchantability, on grounds that the FRCP was defective (Counts I & II).  GSE also sued Hardie and Ferguson for breach of implied warranty of fitness for a particular purpose, on grounds that the FRCP was defective and unfit to serve as a drainage pipe (Counts III & IV).  In addition, GSE sued Hardie for slander relating to allegedly false statements made by Hardie about GSE's installation of the FRCP (Count V).  Finally, GSE sued Hardie under the Florida Deceptive and Unfair Trade Practices Act, Fla.Stat.§501.204, for acts relating to the manufacture, sale and distribution of defective FRCP (Count VI). Thus, each count in GSE's counterclaim is predicated on the core allegation that the FRCP manufactured by Hardie and distributed by Ferguson was defective.

On November 19, 2003, Hardie propounded its First Request for Production, seeking from GSE, among other things: "access to all FRCP excavated and removed from the Project as well as any samples of FRCP currently in the possession of GSE or its agents for the purpose of obtaining samples

for testing." [See Request for Production #84 at D.E. 128, Exh. 1].  On April 23, 2004, Hardie filed a Motion to Compel to produce all of the FRCP that GSE had excavated from the Project [D.E. 51].

In April, 2005, GSE represented that sections of FRCP exhumed from the Project were still available and would be produced to Hardie for purposes of expert testing and analysis. [D.E. 215, Exh. 15].  On June 29, 2005, GSE finally produced the FRCP, in crushed form.  GSE presented Hardie with a storage container filled with small pieces of crushed FRCP material.  Hardie claims that the crushed material cannot be used for testing by any recognized standard.

At an August 19, 2005, hearing in this matter, GSE admitted that in December, 2004, its employees had crushed and destroyed all of the FRCP that GSE had exhumed from the Project:

> GSE Counsel: "So, yes, Judge, we made a mistake. No question about it.  We fall on the sword before the Court today and we request the Court's mercy.... And you will hear today the remorse from these gentlemen that were involved in the destruction of this pipe."
>
> ***
>
> GSE Counsel: "Concededly, Judge, we made a mistake and we altered the state of the evidence. No question. No question...."

[D.E. 228, Exh. 2].

Between the time this lawsuit was commenced in May, 2003, and the time when GSE destroyed the remaining FRCP in December, 2004, GSE never provided Hardie with access to, or samples of, full circumferential lengths of the FRCP that GSE had exhumed from the Project.

Hardie and Ferguson subsequently moved for sanctions dismissing this case [D.E. 127].  In the motion, Hardie and Ferguson argued that GSE misled the Court and engaged in the willful destruction of all exhumed FRCP from the project at issue.  The Court appointed an expert on the matter, Ian D. Moore, Ph.D.  Dr. Moore was appointed by the Court without objection.  On May 1, 2006, and May

16, 2006, Doctor Moore submitted reports in which he set forth his belief that full lengths of the subject pipe are necessary for adequate testing:

> It is my opinion that a full circumferential piece of the FRCP is needed to test the structural integrity of the FRCP installed on the project.
>
> ***
>
> I do not believe it is possible or appropriate to obtain representative measures of strength by cutting small coupons from fragments of the pipe, measuring strength in direct tension or compression, even if computer analysis were then used to infer the strength of a whole pipe specimen.  Testing needs to apply bending moments circumferentially across the pipe wall.

[D.E. 215, Exh. 16].

The Court held a hearing on the motion for sanctions and issued an Order on June 8, 2006, in which it adopted Dr. Moore's opinions and made the following findings: (1)  "[t]he defendant knew that such lengths of pipe were relevant evidence in this cause;" (2) "the defendant [GSE] was negligent in its failure to preserve such lengths of pipe for testing;" and (3) "such negligence has placed the plaintiff at a distinct disadvantage in this litigation and at trial." [D.E. 211].  The Court did not find that GSE's destruction of the FRCP was willful and therefore did not impose the sanctions sought by Hardie. *Id.*  However, the Court found that Hardie was entitled to an adverse inference instruction to be given to the jury.  *Id.*

Hardie and Ferguson now move for summary judgment on GSE's counterclaim, on grounds that due to GSE's destruction of the FRCP, GSE will be entirely banned and precluded from proving that the FRCP was defective at trial.

On June 11, 2007, Hardie moved to voluntarily dismiss the complaint. [D.E. 244], and GSE has indicated to Chambers that it does not oppose such voluntary dismissal.

## II. <u>MOTION FOR SUMMARY JUDGMENT</u>

      **A.**     <u>Standard of Review</u>

Summary judgment is only proper upon a showing by the moving party that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56( c). *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a material factual dispute exists, the court determines whether a reasonable fact-finder would find for the non-moving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Such a determination by the court is done by viewing all evidence and resolving all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

The moving party always bears the initial burden of highlighting that portion of the record which indicates the absence of a genuine issue of material fact. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). Upon satisfaction of this initial burden, the non-moving party is charged with the burden to establish the existence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. In meeting this burden, the non-moving party cannot solely rely upon the pleadings, but rather must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

      **B.**     <u>Discussion</u>

In the instant motion for summary, Hardie and Ferguson argue that none of the parties will be able to offer any expert testimony at trial on the critical issue of whether the FRCP manufactured by Hardie was "defective." Hardie and Ferguson assert that in the absence of such testimony or evidence,

GSE cannot possibly establish, or prove, that Hardie's FRCP was defective and, accordingly, the Court should grant summary judgment in this action.  In support of this argument, Hardie and Ferguson rely on the Eleventh Circuit Court of Appeals decision in *Flury v. Daimler Chrysler Corporation,* 427 F.3d 939 (11th Cir. 2005).

In its response to the motion for summary judgment, GSE presents five arguments: (1) Hardie and Ferguson omitted from the Statement of Undisputed and Material Facts certain facts precluding summary judgment in this case; (2) Hardie and Ferguson are precluded from re-litigating their spoliation motion in the form of a motion for summary judgment; (3) the decisions cited in support of the motion for summary judgment are distinguishable from the facts of this case; (4) significant discovery must be completed and therefore summary judgment would be premature; (5) GSE's expert witnesses will opine that the FRCP at issue was defective.  The Court will address each of these arguments in turn.

### 1.   <u>Omitted And Uncontroverted Facts</u>

GSE asserts that Hardie has not been irreparably prejudiced because Hardie previously tested the FRCP. GSE argues that Hardie and Ferguson omitted from the Statement of Undisputed and Material Facts certain facts precluding summary judgment in this case: (1) Hardie received FRCP from the Project; (2) the FRCP underwent significant testing; (3) Hardie had the ability to test the FRCP when Hardie received same from the Project; (4) Hardie had the requisite equipment to test the FRCP; (5) Hardie tested the FRCP delivered to the Project as part of its Quality Control analysis; and (6) Hardie has a report of the test results. [D.E. 224].

In support of these statements, GSE cites to letters dated  March 10, 2003, and March 25, 2003, which dates are prior to the commencement of this action.  GSE also cites that Hardie failed to produce any documents evidencing the testing referenced in the March, 2003, letters.  In addition, GSE  cites

the following exchange between Hardie's counsel and the Court during the January 30, 2004, hearing in this matter:

> MR. MENDICINO: Your Honor, just very briefly, with regard to the pipe itself, again, whatever pipe was removed from the job, I am advised that it was tested internally by Hardie. It is A [sic] destructive testing. The pipe does not exist anymore. We did our internal testing. It was commissioned by the General Counsel's office for the company. I just don't have any new pipe, and I can't get where I need to go in the lawsuit without getting more. So my hands are kind of tied on that.

> THE COURT: Well, counsel just advised the court that a substantial amount of pipe [sic] has been supplied.

> MR. MENDICINO: Yes. As I said, that pipe was consumed in the initial testing performed. Hardie has the equipment to test pipe. It has to do with part of its QC analysis, the pipe that is done or that is produced for the market. So it had the internal testing ability. It tested the pipe. It has an internal report that was prepared with those test values, but, again, that's not an independent expert report. And as counsel now engaged after the fact, after all that was done, I need to get an independent expert to come in and test it on behalf of the company. I am an outside guy, and here are my tests.

[D.E. 224, Exh. F].

GSE also cites to the testimony of Timothy McGrath, Ph.D., at the hearing held before this Court on November 29, 2005, that he previously performed other work on behalf of Hardie and was paid handsomely. GSE argues that Dr. McGrath "can hardly be considered an 'independent' expert," and Hardie could rely on Dr. McGraths' testimony based on Hardie's test reports and testing methodology.

In its Reply, Hardie and Ferguson argue that the statements presented by GSE are "entirely irrelevant to the present Motion," as "they are *all* facts and/or events that occurred *prior* to the commencement of this action, *and* which were initiated either at the specific direction of Hardie's attorneys in anticipation of litigation, or in a settlement context." [D.E. 228].

The Court finds that the statements presented by GSE do not preclude summary judgment in this matter.  GSE has not set forth specific facts showing that there is a genuine issue for trial.  It is undisputed that the Court's independently appointed expert, Dr. Ian Moore, has opined that multiple full pieces of FRCP are necessary to test the structural integrity of the FRCP that was installed on the project, and that the Court has adopted Dr. Moore's opinions. [D.E. 211].  It is undisputed that GSE was in possession of more than 3,000 linear feet of exhumed FRCP for more than eighteen (18) months after this lawsuit was filed, and GSE "knew that such lengths of pipe were relevant evidence" in this case.  *Id*.  It is undisputed that GSE destroyed all of the remaining exhumed FRCP during the discovery phase of this litigation, notwithstanding Hardie's discovery requests for production, inspection and testing of the exhumed FRCP.  It is undisputed that there are no rings of exhumed FRCP presently available for Hardie and Ferguson to test, using an independent expert of their choice, in order to defend against GSE's claims in this action.

<b>2.　　Prior Spoliation Motion</b>

The Court is not persuaded by GSE's argument that the instant Motion should not be considered because it is an improper attempt to re-litigate the Motion for Sanctions previously filed by Hardie.

The issue before the Court on the Motion for Summary Judgment is whether the adverse inference jury instruction ordered by the Court is an adequate cure for the prejudice to Hardie and Ferguson.  In the Motion for Sanctions, Hardie and Ferguson did not request the remedy of an adverse inference jury instruction.  Nor did the parties research, brief or recite facts or legal authorities that dealt with the issue of whether an adverse inference jury instruction might be an adequate cure for the prejudice suffered by Hardie and Ferguson.

Thus, the instant Motion and the Motion for Sanctions involve separate issues.  Accordingly, GSE's argument that the instant Motion is an improper attempt to re-litigate the Motion for Sanctions is not persuasive.

### 3.   *Flury v. Daimler Chrysler Corporation*

The Court finds that under the *Flury* decision cited in the Motion, the undisputed facts combine to leave no dispute that the instant Motion should be granted.

In *Flury*, the plaintiff sued for enhanced injuries which he claimed to have suffered as a result of a manufacturing defect in his vehicle's airbag system.  427 F.3d 939.  A jury awarded the plaintiff $250,000 for enhanced injury, and the defendant appealed the case on several grounds, including that the district court failed to impose meaningful sanctions for spoliation of the subject vehicle.  *Id.*  The plaintiff had failed to preserve the allegedly defective vehicle and had allowed the vehicle to be sold for salvage despite a request from the defendant for the vehicle's location.  *Id.* at 943.  The district court ordered that an adverse inference jury instruction would be adequate remedy to cure the prejudice to the defendant.

The Eleventh Circuit found that the adverse inference jury instruction was insufficient to cure the prejudice, ruling that "[w]e cannot imagine a case in which the evidence destroyed would prove more critical.  The resulting prejudice to defendant is incurable by any sanction other than dismissal." In so ruling, the Eleventh Circuit stated that the case "hinges upon the significance of the evidence destroyed, and upon the extreme prejudice the defendant suffered as a result." *Id*.  The Court found that "[t]he vehicle was, in effect, the most crucial and reliable evidence available to the parties at the time plaintiff secured representation and notified defendant of the accident." *Id.*  The Court held that "the extraordinary nature of plaintiff's actions coupled with extreme prejudice to the defendant

warrants dismissal." Accordingly, the Eleventh Circuit Court of Appeals reversed the district court's decision for failure to impose meaningful sanctions for the plaintiff's spoliation of critical evidence.

As in *Flury*, the instant counterclaim involves a product defect claim. Counterplaintiff GSE was solely responsible for the spoliation of key evidence in its product defect counterclaim against Hardie and Ferguson, and the prejudice to Hardie and Ferguson is severe. As discussed previously, the Court-appointed expert, Dr. Moore, reported his opinion that full lengths of the subject FRCP are necessary for adequate testing, and this report has been adopted by the Court. However, full lengths of the FRCP are not available for testing because the FRCP was destroyed by GSE after the commencement of this lawsuit. As the Court previously found, GSE knew that such lengths of pipe were relevant evidence in this cause, GSE was negligent in its failure to preserve such lengths of pipe for testing, and GSE's actions have placed Hardie at a distinct disadvantage in this litigation and at trial [D.E. 211].

Hardie claims that it has lost not only a valuable opportunity, but its *only* opportunity, to contest and rebut GSE's core allegation that the FRCP was defective. In *Flury*, the Court noted that spoliation of the vehicle forced experts to use "much less reliable means" of examining the product's condition. Here, however, Hardie and Ferguson claim that the destruction of the FRCP leaves them with *absolutely no means* of examining whether the FRCP was defective at the time GSE alleges it failed. For the reasons set forth above, the Court finds that the nature of GSE's actions and the extreme prejudice to Hardie and Ferguson warrant summary judgment. As in the *Flury* decision, an adverse inference jury instruction would not cure the prejudice to Hardie and Ferguson.

### 4.     Expert Witness Testimony

The viability of the counterclaim rests upon GSE's ability to prove that Hardie's FRCP was defective. The exclusion, or unavailability, of expert witness testimony in the product/manufacturing

defect counterclaim is tantamount to dismissal since neither party will be able to prove, or disprove, the ultimate issue of whether the FRCP was defective without the use or benefit of expert testimony at trial.  *See Worsham v. A.H. Robins* Co., 734 F.2d 676, 685 n.8 (11th Cir. 1984) ("expert testimony is often required to establish defective design of a product"); *Caswell v. Ford Motor Co.*, 2005 WL 337881 (M.D. Fla. 2005); *Savage v. Dane Medical, Inc.*, 31 F.Supp.2d 980, 983 (M.D. Fla. 1999) ("A defect must be proven by expert testimony."); *Alexander v. Dane Med., Inc.*, 37 F.Supp.2d 1346, 1349 (M.D. Fla. 1999)("To prove a defective product, a defect must be proven by expert testimony.").

GSE argues that the case should not be dismissed because its expert witnesses will opine that the FRCP at issue was defective. Hardie and Ferguson argue that GSE cannot be allowed to introduce any expert testimony at trial in an attempt to either establish that the FRCP was defective or rebut the adverse inference that the FRCP was not defective.

In *Flury*, the Court of Appeals addressed this situation as follows:

> Finally, destruction of the vehicle leaves potential abuse in this case.  Not only was plaintiff allowed to present expert testimony regarding airbag malfunction, the reliability of which remains questionable, but the plaintiff's entire case rests upon the testimony of said experts.  Specifically, plaintiff's expert Barry Riner presented testimony regarding the vehicle's condition based on post-accident photographs and an accident report.  While this evidence has some value, we cannot ignore the fact that defendant was precluded from obtaining *much more reliable evidence* tending to prove or disprove the validity of Riner's statements.... As noted by the Georgia Court of Appeals, "the spoliation of critical evidence – for whatever reason – may result in trial by ambush."  That is precisely what happened here.

427 F.3d at 945-46 (emphasis added).

Here, the court-appointed expert, Dr. Moore, opined that crush testing of full circumferential rings of the exhumed FRCP is necessary in order to prove, or rebut, GSE's allegation that the pipe was defective.   Because of GSE's spoliation of the evidence in this case, there remain no full

circumferential rings of exhumed FRCP to test.  Thus, Hardie and Ferguson have lost the opportunity to contest or rebut GSE's core allegation, that the FRCP was defective.

Unlike *Flury*, where spoliation of the vehicle precluded experts from obtaining "much more reliable evidence," here GSE's spoliation of the FRCP leaves the parties with no means of examining whether the pipe was defective at the time it allegedly failed.

### 5.   Discovery

GSE argues that summary judgment would be premature because significant discovery needs to be completed in this case. This case has been pending for than four (4) years, since May 9, 2003. The initial discovery deadline in this case was February 9, 2004. [D.E. 19], and the case is now set for trial to commence on August 6, 2007.

In its Response to the Motion for Summary Judgment, GSE argues for the production of documents relating to Hardie's pre-litigation tests of FRCP.  GSE sought these documents in a Request for Production served on Hardie more than three (3) years ago, on October 29, 2003.  GSE now takes issue with the attorney work product objections raised by Hardie in its Response to the Request for Production.

This discovery issue is not properly before the Court, as GSE is seeking relief from this Court in its Response to the Motion for Summary Judgment rather than in a motion.  GSE seeks to compel the production of certain documents relating to the FRCP and asks this Court to settle a discovery matter.  This request is denied in the Motion for Summary Judgment because it is not properly before the Court.  However, the Court will address discovery issues as they are raised in GSE's "Motion to Compel Compliance with Rule 26(a)(1)( C), Fed.R.Civ.P., Motion to Compel Production, Motion to Compel Compliance with Court's July 1, 2005 Order, Renewed Motion to Strike Supplemental Unverified Interrogatory Answers and Renewed Motion for Sanctions."  *See Infra.*

### III.  MOTION TO VOLUNTARILY DISMISS COMPLAINT

Plaintiff moves to voluntarily dismiss the Complaint under Rule 41(a)(2) of the Federal Rules of Civil Procedure [D.E. 244].  Pursuant to Rule 41(a)(2), Plaintiff, with the approval of the Court, may dismiss an action voluntarily and without prejudice to future litigation at any time during the litigation process.  *McCants v. Ford Motor Company, Inc.*, 781 F.2d 855 (11th Cir. 1986).  Only if a defendant will suffer clear legal prejudice is denial of a motion for voluntary dismissal warranted.  *Id.* at 857.  *See also Pontenberg v. Boston Scientific Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001).

Here, Defendant does not object to the voluntary dismissal of the Complaint.  The Court does not find that Defendant will suffer any clear legal prejudice if the Complaint is dismissed.  Accordingly, the Court will grant Plaintiff's Motion for Voluntary dismissal without prejudice.  Defendant's counterclaim will remain pending for independent adjudication by the Court.  Fed.R.Civ.P. 41(a)(2).

### IV.  MOTION TO COMPEL

GSE moves for the entry of an order: (1) "refusing to allow [Hardie] to use such records in support of its damage claims as provided for in Rule 37(c)(1) Fed.R.Civ.P"; (2) "prohibiting Hardie from introducing any documents into evidence in support of its damage claims pursuant to Rule 37(b)(2)(B), Fed.R.Civ.P."; (3) "striking Hardie's damage claims pursuant to Rule 37(b)(2)( c), FedRCivP"; (4) "in the alternative, requiring Hardie to produce all records and documents supporting its damages as required by Rule 26(a)(1)( C), FedRCivP and the Order"; (5) "requiring Hardie to produce all records and documents supporting its damages, as well as Hardie's quality control/quality assurance records, FRCP composition records, and records relating to supervision during the manufacturing process as required by this Court's previous rulings"; (6) "verify its Supplemental Answers to Interrogatories and amend same so that they accurately reflect those with knowledge of

Hardie's alleged damages"; and (7) "awarding GSE its attorneys' fees and costs for filing this Motion pursuant to Rule 37(a)(4) and 37(c)(1), FedRCivP."

Before addressing the relief sought in the instant Motion, the Court will briefly discuss relevant discovery in this matter.

### A.   Discovery

#### 1.   Hardie's Initial Disclosures

On December 1, 2003, Hardie served its Initial Disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.  In its Initial Disclosures, Hardie stated that its damages were approximately $3,094,266 in lost revenue.  GSE argues that Hardie has failed to produce any documents supporting this damages amount, in violation of Rule 26(a)(1).

On May 9, 2005, more than one year after Hardie filed its Initial Disclosures, GSE filed a Motion for Sanctions for failure to comply with Rule 26(a)(1) [D.E. 96].

#### 2.   Request for Production

On October 29, 2003, GSE served its First Request for Production on Hardie.  GSE now seeks to compel the production of documents in response to Request Numbers 18, 22, and 28.

In Request Number 18, GSE requested "[a]ll documents supporting your claim for damages...." In Request Number 22, GSE requested all documents supporting the allegation in the Complaint that "Hardie has suffered special damages including but not limited to $924,074 in lost revenues...."  In Request Number 28, GSE requested all documents supporting allegations in the Complaint that "Hardie has suffered damages including but not limited to $924,074 in revenues...."

In its Response, dated December 16, 2003, Hardie objected to these Requests under the attorney client privilege, the work product doctrine, and the trade secret privilege.  Hardie stated, however, that "to the extent that they exist, responsive documents will be produced...."

On May 9, 2005, more than one year after Hardie filed its objections to the Requests for Production, GSE filed a Motion to Compel the production of documents relating to Request Numbers 18, 22, and 28. [D.E. 98].

### 3.        Interrogatories

On October 23, 2003, GSE served its First Set of Interrogatories to Hardie.  Interrogatory Numbers 13 and 17 sought information relating to the damages sought in Hardie's Complaint.  On December 16, 2003, Hardie served its Answers to the Interrogatories.  On May 9, 2005, GSE filed a Motion to Compel Better Answers to Interrogatories [D.E. 97].  In the Motion, GSE argued that rather than specifying the damages it is claiming and its calculation for each category of damages, Hardie ignored the requests made in the Interrogatories, redacted material, and referred to other Interrogatory Answers.

### 4.        Court Order of July 1, 2005

On July 1, 2005, the Court entered an Order on the Motion to Compel Better Answers to Interrogatories, the Motion to Compel the Production of Documents, and the Motion for Sanctions for Failure to Comply with Rule 26(a)(1) [D.E. 113].  In the Order, the Court granted GSE's motions in part and directed Hardie to: (1) produce all documents requested in request numbers 18, 22, and 28 of GSE's First Request for Production; (2) amend its responses to Interrogatory Numbers, 13 and 17, among others; and (3) produce the pipe retained by Hardie subsequent to the Project for GSE's inspection, analysis, and testing.

### 5.        Supplemental Responses and Motion to Strike and for Sanctions

On June 30, 2005, Hardie served its Supplemental Answers to GSE's First Set of Interrogatories.

On July 18, 2005, GSE filed a motion to strike the supplemental interrogatory answers and for sanctions [D.E. 118].  In the motion, GSE argued that the supplemental interrogatory answers were deficient and should be stricken because they are unverified.

### 6.    Renewed Motion for Sanctions for Failure to Comply with Rule 26(a)(1)

On June 30, 2005, Hardie produced 637 pages of computer-generated spreadsheets which Hardie claims support its damages calculations.

On July 14, 2005, GSE filed a Renewed Motion for Sanctions for Failure to Comply with Rule 26(a)(1) [D.E. 117].  GSE argued that Hardie failed to produce any documents supporting its damage claims.

### B.    Discussion

As set forth above, GSE's motion deals with discovery relating to Hardie's damages claims as alleged in the Complaint.   Hardie has filed a Motion to Voluntarily Dismiss the Complaint.  GSE has indicated to Chambers that it does not object to the voluntary dismissal and has not filed a Response to Hardie's Motion.  As previously discussed herein, the Court grants the Motion to Voluntarily Dismiss the Complaint.  Therefore, the discovery issues raised by GSE are moot.  In addition, the Court finds that sanctions are not warranted.

Accordingly, GSE's "Motion to Compel Compliance with Rule 26(a)(1)( C), Fed.R.Civ.P., Motion to Compel Production, Motion to Compel Compliance with Court's July 1, 2005 Order, Renewed Motion to Strike Supplemental Unverified Interrogatory Answers and Renewed Motion for Sanctions" [D.E. 241] is denied.

## V. <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED as follows:

For the reasons set out above, Plaintiff's Motion for Voluntary Dismissal [D.E. 244] is GRANTED.  The Complaint is hereby DISMISSED WITHOUT PREJUDICE;

The Motion for Summary Judgment filed by Plaintiff/Counterdefendant James Hardie Building Products, Inc. and Counterdefendant Ferguson Enterprises, Inc. [D.E. 215] is GRANTED.  The counterclaims are hereby DISMISSED;

In light of the dismissal of the Complaint and the granting of summary judgment, Defendant/Counterplaintiff GSE Development Corporation's "Motion to Compel Compliance with Rule 26(a)(1)( C), Fed.R.Civ.P., Motion to Compel Production, Motion to Compel Compliance with Court's July 1, 2005 Order, Renewed Motion to Strike Supplemental Unverified Interrogatory Answers and Renewed Motion for Sanctions" [D.E. 241] is DENIED AS MOOT, and Hardie's Emergency Motion to Strike Counterplaintiff's Expert Witness Disclosure [D.E. 262] is DENIED AS MOOT.  It is further

ORDERED that Hardie's and Ferguson's subsequent Motions for Summary Judgment (DE 256 and 258) are each DENIED AS MOOT in view of the Court's granting Hardie's and Ferguson's prior Motion for Summary Judgment (DE 215).

This case is hereby CLOSED for administrative purposes and any pending motions are DENIED as moot.

-18-

DONE AND ORDERED this 24th day of July, 2007.


_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record

_____